United States v. Silva, Mr. Harvill. Good morning, Your Honors. Your Honors, Douglas Lee Harvill with the Harvill Law Firm is appointed counsel for Mr. Evaristo Contreras Silva. We are here today because Mr. Silva was convicted under 18 United States Code 922-G5 as being an alien illegally and unlawfully in the United States who possessed a weapon. Your Honors, if we were here before Rehaef, we would have no case. If we were here before what? I didn't understand. If we were here before Rehaef, we would have no case. Then if you were illegally and unlawfully in the United States, which Mr. Contreras certainly was, the conviction would stand. But the Supreme Court has now imposed a knowing element on that unlawfulness and illegal status. In this case, Your Honors, several things prevented the government from proving beyond a reasonable doubt that Mr. Contreras knew he was illegally and unlawfully in the United States. Most importantly, Your Honors, that is the I-94, which on its face calls itself and refers to itself as a permit. This is a permit that was issued in 2018, almost four years before the incident which leads to Your Honors and to Mr. Contreras being before you. Over this period of almost four years, Mr. Contreras was a law-abiding person in the He was acting responsibly. He was doing everything that you and I would want any American citizen, any person in this country to do. But the I-94 doesn't say any of that. I mean, it doesn't give you, if you do the following, you're cool. It just says it's a permit. It does say it's a permit, Your Honor, but I think if you look at what impact both the testimony, Mr. Contreras said that word permit had some meaning to him and words have purposes and meaning. Well, but he also got a lot of documents that said you're not here legally, and he's pursuing claims to forestall removal or to prevent removal, and we don't remove people who are here legally. Certainly, Your Honor, and I think that there's a very fine distinction in this case because he clearly, under the law, as a matter of law, he is and was, unless he's been removed, illegally and unlawfully in this country. What Rahafe says is you've got to prove that, government. You've got to show that he had knowledge that he was here illegally. It doesn't say that the government has to disprove his subjective knowledge that he thought everything was okay or he was legal. It doesn't, Your Honor, but if you look at this, what happened in this case, in May of 2018, there's a determination of removal. That is challenged by Mr. Contreras. Mr. Contreras then stays in detention for about three months, and I think if you're at that period, the government proves its case. But in August, what happens? You had a bond condition by the judge, the immigration judge, and that told Mr. Contreras, you can go out on bond legally. You can leave this detention facility. Well, but there's a difference between saying, well, you can stay in the country pending your proceeding, versus you can stay in the country. Certainly, yes. If there had been a . . . But in other words, it didn't change his overall status, and he was informed that he was not here lawfully, and he admits after August of 18 that he was not inspected or admitted. He admits that a couple . . . he affirmatively states it, doesn't he? He does, Your Honor, but I think, though, and again, Your Honor's distinction, I think, is the difference between . . . I think if you read it that narrowly, what you're doing is you're completely taking away the Supreme Court's determination that what the actual knowledge of the defendant is matters. What would . . . in rehab, what they were looking at, what is the guilty knowledge? Well, but in rehab, the court instructed jury, you don't have to find knowledge that he's here illegally. You just have to find knowledge on the prior part, the possession, right, or . . . Correct. I mean, so there was no instruction. In fact, there was a counter-instruction. Correct. In fact, Your Honor, in the jury, we're not arguing the jury wasn't properly instructed. What we're arguing is if you look at the law, even taking what facts came out at the trial and viewing it in the light most favorable to the verdict, they did not meet their burden because otherwise, what you have here is you have someone who an immigration judge says you can go be in the United States, and I think that's the distinction. When he is told you now can be in the United States, that makes him a different class, makes a different person than the person who is here illegally crossing that border. Whenever he first got called, the first time he was in this country, he's called at the border, he's told you're here illegally, he says no problem, and he voluntarily returns. So you're basically saying that it never should have gone to a jury, right? Right. I'm saying that the court should have granted my Rule 29 motion because the facts that were established did not meet the government's burden. That's correct, Your Honor. And again, I think that that's very important. What do you have here? You have that immigration judge notice which says do two things and you can stay in the United States. Don't get arrested again, don't drive without a license. So you're telling someone who doesn't speak English as a primary language, in that report, that bond obligation, you can be legally in the United States granted while we're determining your status. You can be here. How did he react when he did that? He got a job. He was no longer hiding, as many illegal immigrants do. He was no longer hiding in the system, not participating. As close as you can be to a law-abiding citizen while that status is being determined. It's a different class of person. And Judge Wilson, I'm afraid if we take your reading and say, well, listen, these documents said he couldn't be here. I'm afraid if we take your reading, then we're creating an entire class of people. In this case, he was out four years. It could be longer. So you have a class of people who are acting as they were told by the government, who the government knows are in this country, who are, for all intents and purposes, legally in the country while they're pending that determination. And I think that's it. So for all intents and purposes, they're legally in the country except for the documents that advised you're not here legally in the country. I mean, so what is the government to do then? Deport them immediately? Deny all immigration bonds? How does the government forestall subjective knowledge that someone who's subject to one of these, an alien, thinks they're legal? Well, I think in future cases because of this, that I-94 I think is problematic because it does say a permit. And it's the same permit that's given to you if you legally come into the country. Well, and you've got the testimony of the ICE person or Homeland Security that says this is what you get when you're admitted into the country. Right. And it tells you how long you can stay legally. So I'm not saying there aren't plus factors on the other side of the ledger. But again, you're saying this should have never gone to the jury. But then you've got to disregard all these other documents that clearly state you're not there legally. And, Your Honor, those other documents that you're referring to, as I note in my briefing, are notices of hearing. Well, yes, but he's pursuing claims to forestall removal from the country. How can you not infer that he doesn't know he's here illegally if he's seeking that relief? Because the previous question was, what do you do because you have someone who's getting documentation that says you're illegally in the country. Right. But then you have someone who has a permit to be here. Right. So what you could do in the future, it seems to me, is at least couldn't you say, even though you have this permit, if you are illegally in the country and you're receiving documentation that says you're illegally in the country, then you're not legally in the country. Right. Even though you have the permit. You just give them notice. Exactly, Your Honor. And the government, if nothing, likes documents. Why give someone an I-94, which is what you give people who are legally in the country, why allow the government to benefit from creating that confusion? Why not tell the government in the future, issue an I-94-I that says you are illegally in the country, while your petitions are being determined, you can stay here, but you are illegal. Add those words. That is the heart of criminal law, the heart of sanctioning people for their conduct, is criminal intent and criminal knowledge. When the government takes affirmative steps that create confusion, that cast doubts on that, we have to prove beyond a reasonable doubt. The government and I were discussing before this, Mr. Contreras-Silva has served his time. The punishment, per se, is over for this, but the lasting impact on this, this is a person who, in his time here, had one arrest for disturbing the peace. He had a family, he has a child. This conviction is going to have an effect on the rest of his life, the rest of that child's life, the rest of society's life as we deal with that. But we did not give this man fair notice, unequivocal notice, of something that can take away his ability to enter this country again legally, because now he has a felony conviction. That's a lot of consequence without knowing what truly is in his mind, and Judge Wilson, I understand your, how do we overcome this objective? As Judge Graves said, easily. You take away that ambiguity in this case. Well, one way you can resolve it is by having a jury charged with unanimously finding or not finding that he knew. That's the ultimate factual determination for a jury to look him in the eye and hear all the evidence and the witnesses and make a decision. It certainly is, Your Honor. But I think that when you are looking at this, even if you take away that, and obviously I'm not asking Your Honors to go back and re-weight whether the jury was correct or not to that extent. What I'm telling you is if you look at the facts under the law and look to what we're looking toward, look to what gives those rights to possess a weapon, are you being law-abiding or are you being responsible? All the things that this court is looking for for the exercise of this right. And that's what this gets down to, is did he legally exercise a Second Amendment right or a Second Amendment right or not? He otherwise was acting lawfully for the facts that are before this court. When you look at that immigration judge's order, when you look at what it says, no tickets, don't get arrested again. When you look at the I-94, which includes the word permit, that is a government putting in ambiguity. Even if you accept that the jury was given these facts and found these facts, my argument is under the law, those facts are sufficient to create reasonable doubt and no reasonable jury should have found otherwise. The court should not have allowed it to go there. And that would be the heart of my argument. And then if you look at, again, how he acted, actions have consequences as well. He was not hiding. He did not think, whenever the government, when the sheriff's deputies came out and talked to him, with an allegation he committed a crime, with an allegation he had engaged in domestic abuse battery, would you— And I guess I want to ask whether or not you agree that we're talking about something beyond just knowledge. We're talking about his intent. And the things you're talking about now are in addition that he didn't have some criminal intent. Right. Yes. And I think that Rehauf was pointing at that. We punish in this country criminal intent, criminal knowledge. And you have the words of the ambiguity in the government, and then you have his actions. He's not hiding. He's working. When the police come out and talk to him— Well, but the question about knowledge is, did he know he was in the country illegally? Right. And so it has nothing to do with whether he was a model citizen or non-citizen or whatever he was in the community at that point. Did he know he was in the country illegally? And we're also dealing, as Judge Smith said, with a jury verdict. So what I'm really grappling with is, we've got to give deference to a jury verdict unless we're going to take this from the jury and say, sorry, under these circumstances, just can't prove a reasonable doubt. But I mean, so the knowledge question is, did he know he was here illegally? And so you've got evidence on both sides of the ledger. You've got advisories. You've got notices. You've got his own actions, not in abiding by the laws, but in seeking relief from being removed from the country. Plus, he's entered the country illegally before, so it's not his first rodeo, right? Right, right. So you've got all that. How is that not a jury question? Well, first of all, I believe, Judge Wilson, you look toward the Rule 29. I think under these facts, it should not have gone to the jury. We shouldn't be weighing or talking about what the jury found. Under the law and these facts as applied to the law, viewing these facts in the light most favorable to the government, it never should have gone to the jury. Secondly, in criminal cases, Your Honor, you can look to the guilty knowledge, two actions at times. Flight, the flight instruction is one of the ones I'm most familiar with. The fact that you leave the scene of a crime is indicative of your criminal knowledge or your criminal doubt. When the police come talk to him, he doesn't think he's illegally in this country. He's talking to them. He's telling them, hi, I'm here. This is what I'm doing. When they ask him, do you have a gun, he doesn't say, he doesn't hide that fact. He doesn't try to keep it from being exposed. He says, yes, I have a gun. Here it is. He stays there whenever he has a contact with the police, he doesn't run. If you knew that you were illegally in the country, if you knew that you had been caught in possession of a gun, if you knew that you were prohibited, why would you stay? One thing that I don't think you've mentioned today, maybe you have, but in addition to 994, is that he was relying on a lawyer's advice? Correct, Your Honor. To what extent do we consider or not consider that? I think that's relevant because it also goes to the basis of his knowledge. And that's uncontradicted, Your Honor. You had him testifying, this is what he believed, and it contradicted that he did that, and it contradicted by his words or his actions. You had him testifying that he was basing his action off of lawyer's advice. There are just too many things in this particular case. We're not asking for an overreaching, overarching decision. We're saying in this case, this case should not have gone to a jury. If you credit his words and the government's words, which have meaning, his testimony under oath, which has meaning, you have to find the government failed to meet its burden of fruit beyond a reasonable doubt. Your Honors, with that, unless you have any other questions, I've reserved the rest of my time for rebuttal. Yes, you've saved time for rebuttal. Thank you, Mr. Harlow. Thank you, Judge. Mr. Phillips? May it please the Court, Forrest Phillips for the United States. This Court should affirm Mr. Contreras-Silva's conviction because sufficient evidence supports the verdict. I want to start with the deferential standard of review in these Rule 29 cases, right? Viewing all the evidence in the light most favorable to the government, could any reasonable jury reach a conclusion that Mr. Silva knew about his unlawful status? This is not a case about whether Mr. Silva was able to present a competing narrative. This is a case about whether the evidence offered would still allow no reasonable jury to reach that conclusion, and that's just not the issue here. What do you do with the I-94 and the testimony that says it's a permit and this is what we give people who are here legally while they're in the country? What do you do with that? Several things. Let's start with the second half of that question, the testimony. The testimony is irrelevant to Mr. Silva's knowledge because there's no indication that this ICE official or any ICE official spoke with him about the effect of the document. It surely gives support to the idea that certainly if the ICE official thinks this is a form we give to people in the country legally, the alien himself will look at it, English as a second language, and think, okay, this lets me stay here. It says it's a permit. The word permit in this case is doing a lot of work that I don't think it necessarily certainly doesn't make it where a jury is unreasonable in finding them guilty because of that single word, and again, the ICE official's testimony in this case, there's no indication that anyone told Mr. Silva connected to the government that this document grants him legal status. Mr. Silva's not disputing now that this document has no legal effect in itself as to immigration status. Well, but per Judge Graves, very good point. I mean, if the government muddies the water by issuing forms that are very unclear at best, doesn't the tie go to the alien? Doesn't the tie go to the criminal defendant? It doesn't, Your Honor, and it doesn't for multiple reasons. One is the timeline in which Mr. Silva received this document, which again, contains no affirmative representations about immigration status at all. It has this one single word in it, permit, but when Mr. Silva received this document, it was simultaneous with his immigration arrest, moving into immigration custody. It's got very basic information on it, his name, date of birth, and it's basically an identity document, and he receives this document and remains in immigration custody for almost three months. So, a jury understands that. It's unrefuted testimony, 308, 309, 310 in the record. This was a document created and provided to Mr. Silva simultaneous with his arrest. So, he receives this document and remains in immigration custody for three months. Even if there's some ambiguity on the face of this document, Mr. Silva has to understand based on his experience, this is doing nothing to aid his legal status, otherwise he would not be in custody for three months if this document granted him some sort of legal status. I think that for that reason, in the course of argument here, the argument sort of shifted to the bond paperwork being the thing that might have muddied the waters. And that bond paperwork, you know, informs Mr. Silva when he's released that, you know, you were undergoing immigration proceedings, the government says that you are here unlawfully. Similar to the I-94, it contains no representations about, you know, you've received some sort of temporary protected status, you've obtained some sort of temporary lawful immigration status. Every document in this case that contains a representation about immigration status informs Mr. Silva that he is here unlawfully, that the government believes he is here unlawfully. The first document he received stating that is also simultaneous with his arrest. The notice to appear, notice of violation, and accompanying arrest warrant. You said every document he received? Any document that contains a representation about immigration status, it's a representation Mr. Silva that he's here unlawfully, unless you take this word permit to be some sort of representation about immigration status, which it's just not. So again, Your Honor, the jury had ample evidence to conclude that Mr. Silva knew that he was here unlawfully. That includes the numerous documents he received stating that, it includes the method of entry, as you pointed out, Judge Wilson, it's a categorically, easily understandable way of entering the country unlawfully, just crossing the border without inspection or presentment. Are all of the arguments that are being made today on both sides, basically all of those presented to the jury, the pluses and minuses in terms of his knowledge or intent? Certainly, Your Honor, the United States' position at trial was that these documents informing Mr. Silva of his illegal status, in fact, proved that he was aware of his illegal status. I'm just asking, not about what your position was in your various pleadings, but which arguments for or against were made to the jury, pretty much all of what we're hearing today? Yes, Your Honor, and even if some nuances were not, we're at a step now where we have to take the bucket of evidence in this case, and if there's any reasonable view of it, that would support this verdict. I understand that, and that's the standard of review. I'm just asking what it is that the jury heard. I believe they heard, fundamentally, what we're speaking about today. If there's any deviation, I think it's ultimately not relevant to the disposition of this case for that reason, that now it's about whether, when that jury goes in that back room, is there any reasonable view of this evidence that would support the guilty verdict in this case? As far as the pluses and minuses in this case, there's been some discussion about Mr. Silva's testimony, and that's the only record evidence in this case where there's any affirmative testimony, affirmative evidence saying that Mr. Silva believed he was in the country lawfully. The jury's free to discredit that testimony entirely. Those sort of credibility findings are left to the sole province of a jury. How far can the jury go on inference under Rehafe? An inference . . . Inferring knowledge. In other words, there are some things that, I guess, well, you get this, you would clearly know that's an inference, right? So how far can the jury go consonant with Rehafe? I think that's . . . I mean, that's going to be how most of these cases are proven. You know, very rarely are you going to have a direct admission. If someone's aware of their unlawful status or their . . . the fact that they were . . . let's jump modes here to the felon in possession cases, right? The way we prove knowledge of felony status is if they were informed by a judge at some point, you've been convicted of a crime punishable by more than one year. I mean, you know, you're barely . . . you're not going to have a defendant say, I'm aware of that fact now. So circumstantial proof, inference based on evidence in a case, is going to be the way that most of these cases, when it comes to approving knowledge, are established. This is a . . . this is different from felony possession of a firearm because you had nobody say to him, you got that I-94, don't be misled by that I-94. You're illegally in the country without regard for what the I-94 says. No one ever said . . . well, there's no evidence that anyone ever sat him down and explained those apparent inconsistencies to him. Isn't that right? Uh, well . . . A felony possession of a firearm, the judge is told, or the court . . . Sat down, perhaps not. He certainly received numerous documents that inform him that he's here unlawfully. He didn't get a single document that said that I-94 doesn't mean a thing with regard to this that we're sending you now. He didn't get anything that referenced the I-94 and explained any inconsistencies. And that leaves Mr. Silva the ability to argue a competing narrative in this case, perhaps, but it's certainly not so dispositive that it dictates, you know, this case not going to a jury. The jury should be, you know, able to see this document that, again, contains no affirmative representations about immigration status, just the word permit, and then weigh that against, you know, the stacks of papers he's received that say, you know, you were in the country unlawfully. The government has alleged that you entered the country unlawfully and, you know, have . . . And all the notices to appear that expressly tell him that this document has no effect on your immigration status. And Judge Wilson, to your point earlier, right, what are we doing here when Mr. Silva seeks this relief from immigration? He's trying to alter his unlawful status. That is powerful circumstantial evidence in and of itself. If he believes this I-94 has granted him legal status in this country, why is he seeking, I think, three times after he's arrested and given this document, he files some form of petition. He files a petition that just facially indicates he's aware that he's here unlawfully, a petition for adjustment of status, right, from illegal to legal, and cancellation of removal. He later files this asylum petition, similarly seeking to convert his status from illegal to legal. And then he, once he gets out on bond, he hires an attorney to file this third document, which is basically just a repetition of the adjustment of status. And again, that third document's one he files after he's been bonded out. If he believes that he is here lawfully, why is he continually seeking to adjust unlawful? Well, is it enough, though? I think their argument is, whatever my status is, it's pending. While it's pending, though, this I-94 and my lawyer told me, I'm good to be here. I'm okay. Nothing's going to happen to me, so I'm here legally, pending that status. Is that enough? No, it's not. Why not? Let's break down each one of those two things. Let's start with the lawyer advice, right, because that's the only evidence of lawyer advice in this case comes from Mr. Silva's testimony. The jury was free to, given all the evidence in this case suggesting that he did know, disregard that entirely. You know, let's say we find that not credible that someone told you that you were here lawfully. We think that's self-serving testimony that's just not true. Well, but what about a genuine belief that while my proceedings are pending, I'm okay to stay here. I'm here legally. It's temporary, maybe, but, I mean, Rahafe doesn't eliminate that possibility, does it? It doesn't eliminate that argument. It created the inroad for it, but again, the argument is just a competing viewpoint of the evidence. It is not something so dispositive that this case was not entitled to go to a jury. I mean, we're talking about a single . . . Also, counsel opposite and I were talking about Rahafe, and, well, the question is, am I reading it too narrowly? What does the government have to prove in terms of knowledge? Simply a defendant's knowledge of their unlawful status, and no, nothing beyond that in terms of . . . Not a mens rea or a criminal intent or a vicious will or . . . Certainly not a vicious will. I mean, I think you would find some people say that the knowing element in this is technically a mens rea in the sense that it's dealing with a defendant's knowledge, but it's not a vicious will or a desire to act inappropriately. It's just knowledge of their current status, and that's proven time and time over in this case through this evidence and the circumstantial evidence we've discussed about, you know, we're talking about a single word here, this word permit. There's no accompanying representations in this document, which, again, is a very short, threadbare document. It contains nothing but basic biographical information, and then the second page of it says, present this permit to ISF on your . . . having to depart the country through voluntary removal, voluntary departure or removal. I cannot imagine that that single word is so consequential that a jury doesn't even get to weigh it against the stack of evidence . . . You don't even agree that it implies that you can stay here? If I'm a defense attorney, I'm making that argument to a jury, but it's not so consequential and dispositive that you're not allowed to submit a case to a jury. And so, if you're the defense attorney, you'd also say that the reason he continued to comply with . . . every time he got a . . . you need to fill this out, you need to apply for this, you need to submit this. Every time he got one of those, he was trying to be in the country lawfully, so that's why he was doing it. I don't want to go that far to agree that he was trying to be here lawfully. I think that he was caught and trying to adjust his unlawful status, and, you know, was able to, in the set of proceedings that the government offers, bond out while that status was . . . But like you were saying, why would he be doing all this stuff if he thought this I-94 had him covered? That is just simply, again, a competing narrative that can be offered by the defense attorney in this case. The fact that he was bonded out and walking around does nothing to undercut the fact that he was never informed his status had changed from unlawful to lawful. He was informed multiple times that he was here in the country unlawfully through the various notices to appear and notices of violation, arrest warrant. Even the bond paperwork reminds him of that fact, and just like the I-94, the bond paperwork contains no representation going the other way, that you now receive some sort of legal protection. That's just not in this record anywhere. Circling back to the first half of your question, this I-94 document, we talked about the attorney advice already and how the jury was free to disregard that entirely, given the only evidence comes from Mr. Silva's testimony, which is a credibility determination that can't be set aside. That's the jury's providence. But the I-94 document and the ICE official's testimony in court about it is, as we discussed in our brief, simply recounting one way that individuals come into contact with this document. The document itself has no legal effect. That's not disputed to the jury here on appeal. These I-94s are simply snapshots of an immigrant's biographical information, and if an immigrant did have legal status, because let's say they obtained the documents that actually grant that, a visa, that sort of thing, you might see on an I-94 an indication of how long that visa lasts and how long they're permitted to stay in the country. But normally, if we see a piece of paper that says permit, it does have some kind of legal status. You know . . . Outside of this context, just every day you get something in the mail and it says it's a permit to do something, it seems to have a legal status. That, again, is something that could be seized upon and argued to a jury, but it's far short of being so dispositive that the government does not even get to submit to a jury a case where there's all these representations that clarify or suggest the defendant did not believe that document gave him any legal status. Because all these other documents that he received informed him that you are here unlawfully. And again, the timeline of this document's issuance, simultaneous with his immigration arrest, I think it's May 2018, he's arrested in, I think, February for the first offense that he committed in the United States. This is not the one that led to his arrest and prosecution here. Spends some time in state custody, resolves that case, goes immediately into ICE custody, immigration custody, and receives this document before he's filed any petition for cancellation of removal, before he's sought asylum, before he's been granted bond, before he's spoken with an attorney, any of that business, or he purports to have spoken with an attorney. The jury can understand that it's facially unreasonable and use that as circumstantial evidence that the defendant did not earnestly believe what he's telling them. By being caught, you've gained more rights before you've done anything in terms of seeking relief. It's just, you know, it's a story that doesn't wash. The jury, I think, had powerful circumstantial reasons, going back to that being a valid way to prove knowledge in a case like this, to reject this competing defense narrative and instead reach a verdict of guilty in this case. And just kind of to summarize again and bring it back, we've got to view all the evidence in this case in the light most favorable to the government. You're repeating yourself, so if you have anything else that you haven't covered, you can. No, Your Honor. And so with that, unless the Court has questions, I will rest. All right. Thank you, Mr. Phillips. Mr. Harville for rebuttal. Yes, Your Honor. And Judge Smith, I think you hit on a very valid point, especially with someone who speaks English as a second language. Fishing permit, hunting permit, driving permit, these are all things that make your objection legal. If you don't have it, it's illegal. You have, in this case, the government giving a document that, if you look at it, was last changed prior to rehab. Perhaps that's what they should do, is change that document's wording to comply with the current knowledge requirement. That would avoid these in the future. Well, I guess the reason I was asking that question to Mr. Phillips is it's not so much whether the use of the word permit has a legal effect. The question here, it seems to me, is whether Mr. Silva would reasonably have thought that it had a legal effect. Yes, Your Honor. And exactly. And I think if you look at the context in this illegal alien section, a huge difference between alien and the illegal alien. You talk about a community that deals with green cards, temporary work passes, HB1 visas. Words have meaning to them and they're very specific words. And you've told this illegal alien, you have a permit. You haven't just told him that. You've given him a piece of paper. You've given him the permit. That prevents the government from even getting to the jury in this case. Judge Graves, I think the government mentioned felon and possession cases. What do you require for proof there? You require clear and unambiguous, uncontradicted proof from the government that there's been, say, that prior felony conviction. What do you look for? You look for the minutes and the transcripts, the judgment of conviction. If a judgment of conviction had in it, defendant is hereby convicted of a misdemeanor and your honors are presented with that, and the government says, well, he knew, he served more than a year in jail. He knew he was a felon. He went to the penitentiary. But that document says misdemeanor, it's ambiguity. Is that enough in a felon and possession case for the government to meet its burden? It's not because the government created the ambiguity, but the government failed to produce the uncontradicted evidence, documentary evidence, supporting that prohibition, that status. It's exactly what it did in this case. The I-94 created the ambiguity. The bond created an ambiguity. One of the things, if you look at the bond paperwork, I believe that one of the bond documents, the bottom of it, read in Spanish to Mr. Condreras. I would ask you to look to the other documentation, including the I-94. None of that says it was read in Spanish, none of that says it was explained to him. The government gave this man a confusing paperwork. He talked to his attorneys about it. Attorneys told him, according to him, things that made him think he was here legally. The difference is here. We're not saying he was legally in the country. The case law is against this, statutory law is against this. We're saying when you look in his mind with what the government proved at that temporary period, that period between when he's released on bond and whenever the government makes a final determination, the due process determination, aren't you actually here illegally? Because that hadn't been decided and it still hasn't been decided at the time of this case through due process that he was here illegally, there were allegations. He is then told, you have a right to fight these allegations, and he did. You have the right to bond while it's being determined. You have the right to drive to live to do these things. Is that proof beyond a reasonable doubt that he was unlawfully in the country? He was obeying every law in every direction he was given. Is it enough to say that he knew he was in the country illegally? I don't even think you get to his testimony. There's been talk, well, you can disregard his testimony. Our argument is the I-94 created the ambiguity. The bond motion created the ambiguity. You don't even get to the jury. The government, he should not have had to put on a case. The Fifth Amendment is a serious right that is uncontradictorily in his favor. You don't have to prove or say anything if the government doesn't meet its burden. The ambiguity in these two, the I-94 which can be fixed and prevent this from occurring in the future, the bond paperwork which can be fixed and prevent this from occurring in the future, those two things in this due process title where you're talking about a man who may no longer be able to enter this country in the future for something that the government failed to prove that he actually knew he was doing wrong. Look to his actions and look to the words. Give these words meanings. Give his actions meaning. He didn't run. He was doing exactly what the government told him to do. He was in this country doing exactly what the government allowed him to do and told him to do. That's not proof of a legal and unlawfully present in this country beyond a reasonable doubt. Thank you, Your Honors. Thank you, Mr. Harville. Your case is under submission and the court